IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KUHN CONSTRUCTION COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 09-622-SLR |
| | ) | |
| OCEAN AND COASTAL | ) | |
| CONSULTANTS, INC. and | ) | |
| ROBERT F. WAITE, P.E., P.C., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

James S. Green, Sr., Esquire of Seitz, Van Ogtrop & Green, P.A., Wilmington, Delaware.  Counsel for Plaintiff.

Paul A. Logan, Esquire of Powell, Trachtman, Logan, Carrle & Lombardo, P.C., King of Prussia, Pennsylvania.  Counsel for Plaintiff.

Artemio C. Aranilla, II, Esquire, and Joseph Scott Shannon, Esquire of Marshall Dennehey Warner Coleman & Goggin, Wilmington, Delaware.  Counsel for Defendant Ocean And Coastal Consultants Inc.

"J" Jackson Shrum, Esquire of Archer & Greiner, P.C., Wilmington, Delaware.  Counsel for Defendant Robert F. Waite, P.E., P.C.

**MEMORANDUM OPINION**

Dated: July 15, 2010
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

In November 2009, plaintiff Kuhn Construction Company ("plaintiff"), a Delaware

business entity, brought this action against Ocean and Coastal Consultants, Inc.

("OCC"), a Connecticut corporation, and Robert F. Waite ("Waite"), a New York entity

(collectively, "defendants").  Plaintiff brought negligence and negligent

misrepresentation claims against Waite and OCC, and fraud and misrepresentation,

interference with existing contracts, and common law conspiracy claims against OCC.

(D.I. 1 at ¶¶ 107, 115, 122-23, 127, 131)   In December 2008, plaintiff brought a

separate action against Diamond State Port Corporation ("DSPC"), a Delaware

corporation, and its executive director, Eugene Bailey, in the Court of Chancery of the

State of Delaware.  (D.I. 6, ex. A)  In the state action, plaintiff sought an injunction on

DSPC's attempts to force it into arbitration.  (D.I. 6, ex. A at ¶ 66) The Supreme Court

of Delaware, in an opinion dated March 8, 2010, reversed a grant of DSPC's motion to

compel arbitration and dismiss the complaint.  *Kuhn Const., Inc. v. Diamond State Port*

*Corp.*, 990 A.2d 393, 398 (2010).  Plaintiff has taken no further action in that case.

On October 5, 2009, OCC moved to dismiss this case pursuant to Federal Rules

of Civil Procedure 12(b)(7) and 12(b)(1), claiming that plaintiff failed to join a required

party (DSPC), and that such joinder would destroy the court's subject matter jurisdiction

over this case.[1]  (D.I. 6)  On October 20, 2009, Waite joined OCC's motion to dismiss. (D.I. 9)

The court has jurisdiction over this case pursuant to 28 U.S.C. § 1332.  For the reasons that follow, this court denies defendants' motions to dismiss without prejudice to renew.

## II. BACKGROUND

Prior to February 2007, DSPC engaged OCC to analyze the rehabilitation and reconstruction of Wharf Unit 2, Berth 4 at the Port of Wilmington in Delaware and prepare engineered drawings, plans, and specifications accordingly ("the Project").  (D.I. 1 at ¶¶ 6-7; D.I. 1, ex. A at 2; D.I. 6, ex. A at ¶ 2)  Plaintiff asserts that OCC knew and intended that DSPC would supply the datum, survey, and elevation data within the documents to bidders and that bidders would rely on this data for bid-calculation purposes.  (D.I. 1 at ¶ 106)  In soliciting bids, DSPC utilized plans and specifications designed and prepared by OCC ("the Bid Documents"), including a set of plans and specifications dated February 2, 2007, labeled "For Bid Purposes Only" ("the Bid Drawings"), upon which plaintiff relied to prepare its bid.  (*Id.* at ¶¶ 8, 13, 16)

As the lowest bidder, plaintiff entered into a contract with DSPC for the Project on approximately March 29, 2009 for the agreed-upon price of $10,750,000 (hereinafter, "the Contract").  (*Id.* at ¶ 10)  Despite not being listed as the architect in the Bid

---

[1]OCC's claim of lack of subject matter jurisdiction under 12(b)(1) stems from its claim that DSPC is an indispensable party.  Because the claims are interrelated, this opinion only addresses the matter of joinder.  To the extent that DSPC is an indispensable party, its joinder deprives this court of jurisdiction on the basis that its joinder would destroy diversity between the parties.  *See Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.,* 11 F.3d 399, 404 (3d Cir. 1993) (citation omitted).

Documents and not holding a license to practice architecture, the Contract listed OCC as the architect (a term which, according to plaintiff, refers to entities licensed to practice architecture).  (*Id.* at ¶ 11)

Plaintiff references three activities which it claims resulted in the current dispute: (1) changes to the Bid Documents after the contract award; (2) undisclosed subsurface conditions and obstructions; and (3) welding issues.  (*Id.* at ¶¶ 12, 57-58, 77-104)

### A. Changes to the Bid Documents After Contract Award

In preparing its bid, plaintiff relied on note 4 of the Bid Documents, stating in part:

> Do not use more than one splice per pile.  Splice of taper section to pipe section shall not count as a splice as defined here.  Do not splice pile in lower 40 feet.  Both upper and lower sections of pipe piles ends shall be smooth, square and flat prior to splicing.  Splice with associated pile and fitting corp.  Advanced splicer S-18000 or equivalent accepted by the engineer of record.

(*Id.* at ¶ 14)   In creating its bid, plaintiff relied on information in the Bid Documents stating that only the connection between the lowermost section of the steel pipe pile section and the adjoining section of steel pipe pile required welding, and all other splicing would be done using the S-18000 or equivalent and would require no welding. (*Id.* at ¶¶ 15-16)

Following the award of the contract to plaintiff, OCC, through DSPC, changed the contract requirements through alterations in the drawings.[2]  (*Id.* at ¶ 12)  On approximately May 24, 2007, plaintiff received from OCC a new set of drawings, dated

---

[2]Contradictory to this, plaintiff alleges in its Chancery Court complaint that it was DSPC, through OCC, which changed the drawings.  (D.I. 6, ex. A at ¶ 19) (alleging that "[a]fter the Contract was awarded to Kuhn, [DSPC], through its engineer, [OCC], changed the drawings from those included in the [B]id [D]ocuments.)

May 23, 2007 and labeled "Issued for Construction," which did not identify the changes from the Bid Drawings (hereinafter, the "IFC Drawings").  (*Id.* at ¶¶ 17-18)  Shortly after receipt of the IFC Drawings, on approximately May 29, 2007, plaintiff issued a Request for Information ("RFI") to DSPC to have OCC mark changes between the two sets of drawings.  (*Id.* at ¶ 19)  OCC replied on or about June 6, 2007 that most of the changes within the [IFC] Drawings "address the elevations field verified by [plaintiff's] surveyor and the shifting of the deadman wall 10 [feet] waterward due to interferences."  (*Id.* at ¶ 20 (alterations in original))  This reply included a new set of drawings ("the Highlighter Drawings") highlighting changes between the Bid Drawings and the IFC Drawings.  (*Id.* at ¶ 21)  Plaintiff alleges that OCC did not note **all** changes on these drawings and, instead, purposefully obscured material changes and revisions it had made between the Bid Drawings and the IFC Drawings.  (*Id.* at ¶ 22)

At a later meeting, OCC informed plaintiff that splices in the upper section of the steel pipe piles were considered "tension splices" requiring welding, referencing note 4 on the IFC drawings for this requirement.  (*Id.* at ¶ 23)  This note is substantially similar to note 4 on the Bid Documents, except that it states "[a]dvanced splicer S-18000 ***welded-in place*** or equivalent accepted by the engineer of record."  (*Id.* at ¶ 24) (emphasis in original)  OCC made no note in the Highlighter Drawings of this change. (*Id.* at ¶ 26)  Plaintiff alleges that OCC knowingly and intentionally misrepresented that this change was in the Bid Documents when it had not been added until the IFC Documents and that OCC intentionally and purposefully failed to note the change in the Highlighter Drawings and in its response to plaintiff's RFI.  (*Id.* at ¶¶ 25-26)

4

On July 7, 2007, OCC issued another set of construction documents with "clouds" and "call outs" marking changes made, including the change in wording of note 4 ("the July 7 Drawings"). (*Id.* at ¶¶ 28, 29)  OCC again revised the construction drawings on August 20, 2007 ("the August 20 Drawings"). (*Id.* at ¶ 30)  Plaintiff alleges that in the accompanying correspondence, OCC knowingly misrepresented that revisions "reflect[ed] the National Geodetic Vertical Datum of 1929 (NGVD29) and changes to the deck drainage system." (*Id.* at ¶ 31)  In drawing no. 205079-6B-09, "Typical Wharf Cross Section," included with the August 20 Drawings, OCC described the revision as "updated datum/revised elevations," and did not "call out" or "cloud" individual changes made but, plaintiff alleges, purposefully obscured the revisions by "clouding" the entire drawing. (*Id.* at ¶¶ 32-33)

While the Bid Documents utilized the City of Wilmington Datum, with a mean low water elevation of 0.0 feet, the August 20 Drawings utilized the NGVD29 datum with a mean low water elevation of negative 1.82 feet. (*Id.* at ¶¶ 34-36)  Plaintiff claims that, were the elevation adjustments solely based on the difference between the Wilmington Datum and the NGVD29 datum, all elevations on the August 20 Drawings should have been uniformly adjusted, reflecting the 1.82 foot differential in the mean low water level. (*Id.* at ¶ 37)  However, OCC made and negligently and/or intentionally obscured and misrepresented other elevation changes. (*Id.* at ¶ 38)  Section 3.02 of the Contract Specifications, pertaining to a pre-dredge survey, provides that survey results "shall be referenced to the U.S. Army Corps of Engineers Mean Low Water Datum," 2.3 feet below NGVD29, and that horizontal datum "shall be North American Vertical Datum of 1983 (NAD83)." (*Id.* at ¶ 39)  On the basis of Section 3.02(D), OCC made wholesale

5

elevation changes which they did not disclose to plaintiff. (*Id.* at ¶ 40)  OCC also lowered the existing and finish elevations of wharf structures depicted on the August 20 Drawings by approximately 2.24 feet relative to the mean low water level, resulting in a total datum change of approximately 4 feet with respect to the structures. (*Id.* at ¶ 41) OCC did not disclose to plaintiff the changes to the finish elevations of the structures and associated work. (*Id.* at ¶ 44)

The elevation changes meant that much of plaintiff's work was under water[3] by at least 2.5 feet from the elevations shown in the Bid Documents and Bid Drawings, drastically affecting the means and duration of the construction, as well as plaintiff's cost to build the Project. (*Id.* at ¶ 45)  Tide changes and the necessity of working around low tide limited the nature of the work and time in which completion was possible, causing a change in the means of construction, the daily work schedule, and the overall scheduling of work, thus increasing the time, labor, and equipment costs to perform the work.[4] (*Id.* at ¶¶ 47, 50-54)

Because of the increased costs, plaintiff issued "Change in Condition No. 00001," stating that the survey changes in elevation reflected in the August 20 Drawings would significantly affect its work. (*Id.* at ¶ 48)  Though the Contract listed OCC as the

---

[3]Though the complaint does not define "under water," it appears to be a term of art referring to the fact that changes in elevation meant that, at times, the construction site would be under water due to the tides, but that it was not permanently under water. *See* D.I. 1 at ¶¶ 46, 52.

[4]Changes necessitated by the significantly different conditions included working at night during low tide, and altered access to the work area even when not under water. (*Id.* at ¶¶ 51-52)

"architect" that would address questions, OCC did not respond to this notice. (*Id.* at ¶ 49) DSPC also was unresponsive. (*Id.* at ¶ 49)

### B. Undisclosed Subsurface Conditions and Obstructions

As part of the original design and preparation of the Bid Documents, OCC conducted and/or reviewed subsurface investigations of the existing conditions at Berth 4. (*Id.* at ¶ 56) OCC incorporated its findings into a January 11, 2006 presentation to the Delaware Department of Transportation Joint Committee on Capital Improvements. (*Id.* at ¶ 57) Despite having specific knowledge of existing subsurface conditions at Berth 4 that would affect the cost and duration of the work described in the Bid Documents, OCC did not include this information in the Bid Documents, or otherwise disclose it. (*Id.* at ¶ 58) The undisclosed conditions were not of a type which a reasonable bidder could be expected to discover through a reasonable pre-bid investigation, and included existing subsurface conditions and geotechnical information bearing on the slope stability of the materials and the ability to install steel pipe pile without material subsurface obstructions and interferences. (*Id.* at ¶¶ 59, 62) OCC utilized some information about subsurface conditions in its "basis of design," but plaintiff contends that OCC made false and fraudulent misrepresentations about the existing subsurface conditions to all bidders, which plaintiff relied upon in selecting the means and methods for driving the steel pipe pile when preparing its estimate and bid. (*Id.* at ¶¶ 60, 61, 63) Though OCC was aware that information on subsurface conditions was critical to plaintiff's bidding, planning, and construction, and that the conditions would impact the design and means, methods, and duration of construction, plaintiff asserts OCC purposefully withheld full disclosure of the known conditions and likely impacts to

7

cost and duration of work, preventing plaintiff from developing a plan to mitigate costs. (*Id.* at ¶¶ 73, 75)

Plaintiff discovered the actual existing subsurface conditions only after completion of demolition on the existing berth. (*Id.* at ¶ 64) At this point, OCC directed plaintiff to alter the planned construction sequence and commence steel pipe pile driving with the A-Line pile.[5] (*Id.*) Periodically, plaintiff discovered subsurface conditions materially different from those in the Bid Documents, and notified DSPC and OCC of the differences.[6] (*Id.* at ¶ 72)

As a result of the nondisclosure of pre-existing subsurface obstructions, damage occurred to several of the piles driven by plaintiff. (*Id.* at ¶ 68) Although OCC knew that the stability of submerged slopes was at or near failure and that removal of existing subsurface obstructions would lead to further failure, OCC did not disclose this to plaintiff or other bidders during the bidding process, nor during plaintiff's attempts to complete the work as described in the Bid Documents and consistent with plaintiff's work plan. (*Id.* at ¶¶ 69-70) This lack of disclosure increased the duration of plaintiff's work, causing additional labor and equipment costs, as well as lost profits. (*Id.* at ¶ 71)

---

[5]Here, plaintiff again makes contradictory assertions as to who directed the action in its Chancery Court complaint. (D.I. 6, ex. A at ¶ 21) (stating that "[i]n addition, [DSPC], through OCC, directed that Kuhn alter its planned construction sequence and directed that pile driving was to commence by Kuhn driving the 'A-line' pile.")

[6]One example of the problems caused by the misrepresentations is that the Bid Documents depicted timber sheeting between two rows of new steel piles, while the actual existing subsurface conditions revealed that much of the existing timber sheeting was in direct conflict with the as-designed location of the new steel pipe piles. (D.I. 1 at ¶¶ 65-66) Additionally, existing timber pilings had been driven erratically, with inconsistent spacing between them, contrary to the depiction in the Bid Documents. (*Id.* at ¶ 67)

Despite repeatedly-issued RFIs to OCC and DSPC, OCC and DSPC refused to provide substantive responses to plaintiff. (*Id.* at ¶ 74)

### C. Welding Issues

As noted earlier, OCC changed the drawings and requirements of the Contract from those in the Bid Documents. One such alteration was to prohibit splicing sections of pipe pile with the no-weld S-18000 splicer, and instead require welding of splice sections of pile pipe (reflected in note 4 of the Bid Drawings, and revised note 4 of the IFC Drawings[7]). (*Id.* at ¶ 77)  The Contract did not specify requirements for welding the pile splices; nevertheless, OCC, through DSPC, directed plaintiff to weld the pile splices.[8] (*Id.* at ¶¶ 78-79)  Consistent with the Bid Documents, and the fact that the Contract did not contain specifications for requirements for welding the pile splices, OCC specified the "base metal" of the steel pipe for the Project, however, did not select a prequalified base metal listed by the American Welding Society ("AWS"). (*Id.* at ¶¶ 80-81)

Because OCC at no time directed that the steel pipe pile be separately AWS-prequalified, the pipe pile specified by OCC and used on the project had not been tested and did not meet AWS standards. (*Id.* at ¶ 82)  OCC did not direct plaintiff to perform testing to qualify the base metal it specified for use on the Project. (*Id.* at ¶ 83)  Aware

---

[7]Discussed above at 3-5.

[8]Again, the District Court complaints and Chancery Court complaints contradict each other, with plaintiff claiming in the Chancery Court that DSPC, through OCC directed plaintiff to weld the pile splices. (D.I. 6, ex. A at ¶ 20) (alleging that "[f]ollowing award of the Contract, [DSPC], through OCC, directed that the method of splicing sections of the pipe pile should be 'welding,' but the Contract did not contain any specifications outlining the requirements for welding of pile splices.")

that the base metal of the pile did not meet AWS prequalification standards and that the splice welding of the pipe pile was not included in the Bid Documents, OCC developed "weld acceptance criteria," including use of outside consultants for weld approval prior to a pile's release to plaintiff for driving.  (*Id.* at ¶ 84-85)

Although all steel pipe utilized the specified base metals and the welds were inspected by DSPC's on-site inspectors before release of the piling to plaintiff, OCC and DSPC claimed there was an issue concerning the quality of the welds on the steel pipe piles.  (*Id.* at ¶ 86)  OCC retained Waite to provide information to OCC, plaintiff, and DSPC regarding the quality of the welds on the steel pipe pile welded splices.  (*Id.* at ¶ 87)  Waite then issued at least three reports on the quality of the welds, including the Report of Bore-Scoped Observations of 110 Pilings, August 15, 2008 (Bore Scope Report).  (*Id.* at ¶ 88)  The Bore Scope Report was based on a weld examination via bore scope of 110 (selected by OCC) of the approximately 360 driven steel pipe piles. (*Id.* at ¶¶ 89-90)

The Bore Scope Report showed that there was "more than adequate justification for the rejection of all the top and extension welds due to gross non-conformance to the contract and ANSI/AWS D1.1:2006, *Structural Welding Code – Steel* . . . requirements." (*Id.* at ¶ 90) (omissions in original)  Waite also found that 27 out of 110 of the backing rings on the welds were dislodged, reporting that the "dislodgement rate should have been 0%, but it was 25%," indicating "a severe problem with the weld quality in the top welds."  (*Id.* at ¶¶ 91-92)  On this basis, and despite not iterating a problem with 83 of the 110 piles analyzed with the bore scope, Waite represented to plaintiff, OCC, and DSPC that there was a severe problem with **all** of the welds of the approximately 360

10

steel pipe piles, necessitating rejection of all of the steel pipe piles. (*Id.* at ¶¶ 93-94) Based on Waite's representations, OCC informed plaintiff that it rejected all steel pipe piles and that they would have to be remediated. (*Id.* at ¶ 101)

Plaintiff asserts that Waite negligently misrepresented that the percentage basis of 110 bore scope steel pipe piles was a proper engineering basis to reject, rather than review, all steel pipe piles on the Project. (*Id.* at ¶ 95) Waite's analysis did not conform to AWS standards; Waite did not test any welds. (*Id.* at ¶ 96) Additionally, Waite rejected the previous acceptance testing of the steel pipe piles by OCC inspectors. (*Id.* at ¶ 97) Waite did not include in any report disclosed to plaintiff any analysis of the impact of the undisclosed subsurface conditions on plaintiff's work. (*Id.* at ¶ 99) Plaintiff completed PDA testing of the driven steel pipe pile, confirming to OCC, DSPC, and Waite that results showed each pile exceeded the load requirements specified in the Contract. (*Id.* at ¶ 98)

Plaintiff alleges that Waite at all relevant times knew OCC and DSPC would use its opinions to justify nonpayment to plaintiff for the additional work caused by the defects in and changes to OCC's design, or for OCC's concealment of information from and misrepresentations to plaintiff. (*Id.* at ¶ 100) Based on Waite's representations, relied on by plaintiff, OCC, and DSPC, plaintiff was directed to remediate the allegedly defective welds by filling the steel pipe piles with concrete, resulting in the spoliation of all evidence of the actual strength of the welds. (*Id.* at ¶¶ 101-02) Plaintiff incurred additional labor and equipment costs and lost profits due to the alleged negligent misrepresentation of the quality of the welds and the existence of basis for rejection of all welds. (*Id.* at ¶ 103) Additionally, due to Waite's misrepresentations, and based on

11

OCC's advice in rejecting the piles, DSPC refused to pay plaintiff for the costs incurred

for installation and remediation of the piles.  (*Id.* at ¶ 104)

## III.  STANDARD OF REVIEW

Rule 12(b)(7) provides for the dismissal of a claim where the plaintiff has failed to

join a required party. Fed. R. Civ. P. 12(b)(7).  For the purpose of Rule 12(b)(7), the

court accepts as true the factual allegations of the complaint. *See Jurimex Kommerz*

*Transit G.M.B.H. v. Case Corp.*, 65 Fed. App'x 803, 805 (3d Cir. 2003).  A court, in

evaluating such a motion, applies the two-part test found in Rule 19.  The first part of

this test asks whether the absent party is necessary for adjudication of the issue.  The

second part of the test is equitable in nature, and is directed to whether a necessary

party is indispensable to a fair resolution of the issues.  *Id.*  Rule 19(a) provides that an

absent person is a necessary party if he is subject to service of process and either:  (1)

in his absence, complete relief cannot be accorded among the parties; or (2) the absent

person claims an interest in the subject matter and that his absence will, as a practical

matter, either prejudice his ability to protect that interest or result in multiple or otherwise

inconsistent obligations.  Fed. R. Civ. P. 19(a).

If a person is deemed necessary under Rule 19(a) but cannot be joined, the court

must ascertain the extent to which prejudice will result to the non-party; the ability of the

court to shape relief to avoid prejudice to absent persons; the adequacy of relief

available to parties in the necessary party's absence; and the adequate remedy

available to the plaintiff if the action is dismissed for nonjoinder.  Fed. R. Civ. P. 19(b).

Rule 19(b) only applies where a person should be made a party under Rule 19(a).  *See*

12

*Field v. Volkswagenwerk AG*, 626 F.2d 293, 300 (3d Cir. 1980).  Thus, if a party is not necessary under Rule 19(a), the court need not conduct an analysis under Rule 19(b).

## IV.  DISCUSSION

Plaintiff asserts four claims against OCC:  (1) negligence and negligent misrepresentation; (2) fraud and misrepresentation; (3) interference with existing contracts; and (4) common law conspiracy.  (D.I. 1 at ¶¶ 107, 122-23, 127, 131)  Plaintiff also asserts a claim of negligence and negligent misrepresentation against Waite.  (*Id.* at ¶ 115)

OCC claims that DSPC is a required party under Rule 19(a) and that the court should grant its motion on that basis.  (D.I. 6 at ¶¶ 16-18)  OCC further contends that, although DSPC's joinder would destroy diversity and remove subject matter jurisdiction from the court, joinder is appropriate because DSPC is an indispensable party under Rule 19(b).  (D.I. 6 at ¶¶ 19-21)  OCC bases its claim in part on contradictions between the Chancery Court action against DSPC and the instant action; while plaintiff alleged in the Chancery Court action that DSPC acted through its engineer (OCC), in this case, plaintiff alleges that OCC acted through DSPC in changing contract requirements and altering drawings.  (*Id.* at ¶¶ 12, 14-15)  Conversely, plaintiff argues that because the claim against DSPC is a contract claim, whereas the claims against OCC and Waite are tort claims, complete relief can be awarded in the current matter without DSPC, and Rule 19(a) does not require joinder.  (D.I. 11 at ¶¶ 1-4; D.I. 12 at ¶¶ 3, 8)

13

## A. Rule 19(a)(1)(A):  Plaintiff's Ability to Obtain Relief

Rule 19(a)(1)(A) asks whether, in a person's absence, the court can grant complete relief among the existing parties.  The court, therefore, begins its analysis by evaluating each of plaintiff's claims and its ability to recover.

### 1. Negligence and negligent misrepresentation

Plaintiff asserts claims of negligence and negligent misrepresentation against both OCC and Waite.  To prove negligent misrepresentation, a plaintiff must show:  (1) the existence of a pecuniary duty to provide accurate information; (2) an actual "material misrepresentation" (not one which merely **may** have existed); (3) that the defendant failed to exercise reasonable care in obtaining or communicating the information; and (4) that the plaintiff suffered a pecuniary loss caused by reliance.  *See Pa. Employee, Benefit Trust Fund v. Zeneca, Inc.*, Civ. No. 05-075, 2010 WL 1816234, at *19 (D. Del. May 6, 2010).  *See also Gallagher v. E.I. DuPont De Nemours and Co.*, Civ. No. 06C-12-188, 2010 WL 1854131, at *5 (Del. Super. Apr. 30, 2010) (citing *Lundeen v. PricewaterhouseCoopers, LLC*, Civ. No. 04C-03-200, 2006 WL 2559855, at *6 (Del. Super. Aug. 31, 2006)).  A pecuniary duty is not dependent on contractual privity; rather, it arises when the parties are in a business relationship, from which they expect pecuniary benefits.  *Outdoor Technologies, Inc. v. Allfirst Fin., Inc.*, Civ. No. 99C-09-151, 2001 WL 541472, at *5 (Del. Super. Apr. 12, 2001).

Plaintiff has alleged facts sufficient to suggest that both OCC and Waite were in a business relationship from which they could expect pecuniary benefits with respect to plaintiff.  (D.I. 1 at ¶¶ 6, 87)  OCC, in particular, appears to have been an important part of the relationship between plaintiff and DSPC from the beginning.  (*Id.* at ¶ 6)  Further,

14

plaintiff has alleged facts sufficient to support the possibility that OCC and Waite participated in a material misrepresentation, and did not exercise reasonable care in communicating material information to plaintiff. (*Id.* at ¶¶ 105-09, 113-17) Among other claims, plaintiff asserts that OCC misrepresented or obscured changes in the construction documents and specifications, did not disclose known subsurface conditions which would have affected the work plan, and changed welding requirements. (*Id.* at ¶¶ 33, 39, 44, 58, 77) Plaintiff further alleges that Waite misrepresented that its inspection of a sample of welds was sufficient to reject all welds. (*Id.* at ¶¶ 94-95) Plaintiff also alleges it has suffered a pecuniary loss caused by reliance on the representations by OCC and Waite. (*Id.* at ¶¶ 47, 110-12, 118-20)

Because the elements of negligent misrepresentation rely upon the defendants' actions, and not upon the relationship between the defendants and DSPC, complete relief can be granted on this count without DSPC in the case. Even if DSPC may be in part liable for the negligent misrepresentations of OCC, this court has found that joint tortfeasors are not necessary parties under Rule 19(a). *See CC Investors Corp. v. Raytheon Co.*, Civ. No. 03-114, 2005 WL 81591, at *3 (D. Del. Jan. 7, 2005).

### 2. Fraud and misrepresentation

Under Delaware law, fraud or deceit consists of the following elements: (1) a false representation, usually of fact, made by the defendant; (2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as a result of such reliance. *Latesco, L.P.*

15

*v. Wayport, Inc.*, Civ. No. 4167, 2009 WL 2246793, at *8 (Del. Ch. July 24, 2009) (citing *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983)).

Plaintiff asserts this claim against OCC only. In its complaint, plaintiff sufficiently alleges that OCC knowingly made false statements with the intent to induce plaintiff's reliance upon them in construction of the Project. (D.I. 1 at ¶¶ 121-23) Plaintiff alleges among other things that OCC made false and fraudulent misrepresentations in asserting that note 4's welding requirement was always part of the Contract requirements as bid, that the elevation datum was only partially changed on the August 20 Construction Drawings when wholesale elevation changes were made, that subsurface obstructions would not interfere with plaintiff's driving of the steel pipe pile, that the Contract plans and specifications fully disclosed all relevant information, and that OCC regularly concealed changes made to the Contract drawings. (*Id.* at ¶¶ 122-23) Plaintiff also alleges that its reliance was justified, and that the resulting damage (the increased costs of construction) was due to OCC's misrepresentations. (*Id.* at ¶ 124)

With respect to the joinder of nonparties, this court has previously held that in claims for fraud and misrepresentation, while there may be some overlapping obligations, all persons involved in the contract need not be parties to the action. *See E.I. duPont de Nemours & Co. v. Rhodia Fiber and Resin Intermediates, S.A.S.*, 197 F.R.D. 112, 124 (D. Del. 2000) *rev'd on other grounds*, 269 F.3d 187 (3d Cir. 2001). As such, complete relief is possible where OCC is the only defendant, and DSPC is not a necessary party to this claim under 19(a)(1)(A).

16

### 3. Interference with contract

To prove tortious interference with contract, plaintiff must be able to show five elements under Delaware law: (1) the existence of a contract; (2) defendant's knowledge of the contract; (3) an intentional act that is a significant factor in causing the breach of contract; (4) that the act was done without justification; and (5) that injury resulted. *Johnson v. Geico Cas. Co.*, 673 F. Supp. 2d 244, 250 (D. Del. 2009) (citation omitted).

Plaintiff has shown that there was a contract, of which OCC was aware. (D.I. 1 at ¶ 11) Plaintiff also alleges facts supporting the possibility of interference with contract. Plaintiff states that OCC's interference causing breach of contract included, inter alia, advising DSPC that it should not pay for any and all costs associated with welding the spliced upper sections of the steel pipe pile and that it should in fact reject all steel pipe piles; advising DSPC that it should withhold all monies associated with plaintiff's work on the steel pipe piles; not disclosing the lowering of all wharf and associated structure elevations, and then advising DSPC not to pay plaintiff for the extra work associated with the changes in elevations; concealing information about existing subsurface conditions, and then advising DSPC not to pay plaintiff for costs associated with concealed subsurface obstructions. (D.I. 1 at ¶ 127-28) Plaintiff further alleges that OCC took these actions without justification. (*Id.* at ¶ 127) Plaintiff has also alleged that injury resulted from OCC's actions. (*Id.* at ¶ 129)

Because interference is an independent tort claim, complete relief can be granted by having the allegedly tortious actor in the claim, although the signatory on the contract is not part of the case. Even if this court finds that DSPC is a co-obligor, DSPC is not a

17

necessary party under Rule 19(a)(1)(A) for the purposes of obtaining complete relief.[9]
*See Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 402 (3d Cir.
1993).

### 4. Conspiracy

The Third Circuit follows the Seventh Circuit's approach in determining whether a
complaint sufficiently alleges civil conspiracy. *See Hurst v. City of Rehoboth Beach*, Civ.
No. 03-362, 2005 WL 823867, at *5 (D. Del. Mar. 31, 2005) (citing *Melo v. Hafer*, 912
F.2d 628, 638 n.11 (3d Cir. 1990)). That is, a civil conspiracy is "a combination of two or
more persons acting in concert to commit an unlawful act, or to commit a lawful act by
unlawful means, the principal element of which is an agreement between the parties to
inflict a wrong against or injury upon another[.]" *Adams v. Teamsters Local 115*, 214
Fed. App'x 167, 172 (3d Cir. 2007) (quoting *Hampton v. Hanrahan*, 600 F.2d 600, 620-
21 (7th Cir. 1979), *rev'd in part on other grounds*, 446 U.S. 754 (1980) (internal
quotations omitted)); *see also Smiley v. Daimler Chrysler*, 538 F. Supp. 2d 711, 718 (D.
Del. 2008) (explaining that a plaintiff must show evidence of "a combination of two or
more persons or entities either for an unlawful purpose, or for the accomplishment of a
lawful purpose by unlawful means, resulting in damages."). While it may be difficult to
obtain direct evidence of a conspiracy between OCC and DSPC, circumstantial evidence
is permissible. *See Hampton*, 600 F.2d at 621. So long as plaintiff has pled that the co-

---

[9]OCC argues that, because it is a mere agent of DSPC, it cannot, by definition,
have caused outside interference with the contract. (D.I. 14 at 3). For reasons
discussed below, a determination of OCC's status as an agent is inappropriate at
this stage of litigation. Because plaintiff has alleged facts supporting this claim
and because, if true, plaintiff can obtain complete relief without DSPC as a party,
plaintiff satisfies Rule 19(a)(1)(A) on this count.

18

conspirators had a meeting of the minds and reached an understanding about the conspiracy's objectives, dismissal would be inappropriate at this time. *See id.* (citing *Adickes v. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).

It is not necessary to prove the existence of an express agreement among all co-conspirators. *Id.* Co-conspirators do not need to know all details of a plan or possess similar motives, but must share a "general conspiratorial objective." *Id.* Plaintiff ultimately must prove that there was "a single plan, the essential nature and general scope of which [was] known to each person who is to be held responsible for its consequences." *Id.* (citing *Hoffman-LaRoche, Inc. v. Greenberg*, 447 F.2d 872, 875 (7th Cir. 1971) (alteration in original)).

Conspirators are liable on a joint and several basis and, as such, plaintiff can obtain complete relief without joining all possible co-conspirators. *See Janney Montgomery Scott*, 11 F.3d at 406; *Rose Hall, Ltd. v. Chase Manhattan Overseas Banking Corp.*, 494 F. Supp. 1139, 1147 (D. Del. 1980) (citing *Wall v. Wall*, 168 S.E. 893, 895 (Ga. 1933)). This court has previously found that "a case cannot be dismissed for nonjoinder even though only one conspirator is subject to the jurisdiction of the court." *Rose Hall, Ltd.*, 494 F. Supp. at 1147 (citing *Wall*, 168 S.E. at 895). The gravamen rests on the underlying claims. *McLaughlin v. Copeland*, 455 F. Supp. 749, 752 (D. Del. 1978). *See also Lifeng Lee Hsu v. Great Seneca Fin. Corp.*, Civ. No. 09-4058, 2010 WL 1695638, at *1 (3d Cir. Apr. 28, 2010).

Plaintiff has alleged facts suggesting that OCC acted in concert to justify DSPC's nonpayment. (D.I. 1 at ¶¶ 130-32) Among other things, plaintiff alleges that OCC engaged Waite for the purposes of using its opinions to justify nonpayment to plaintiff.

19

(D.I. 1 at ¶¶ 100)  As discussed above, plaintiff has also alleged facts supporting the underlying torts.  On this basis, the court will deny OCC's motion on this issue.

### 5. OCC's agency claim

OCC asserts that DSPC is a necessary party because OCC was simply acting as an agent of DSPC.[10]  (D.I. 14 at 3)  The court need not decide whether OCC was acting as DSPC's agent because, for the reasons laid out below, even if DSPC were a principal, its joinder is not necessary in a tort action.  Additionally, an agency relationship is determinable only after appropriate discovery and, thus, is not appropriate for a motion to dismiss. *See Jurimex Kommerz Transit G.M.B.H. v. Case.* Corp., 65 Fed. App'x 803, 808 (3d Cir. 2003) (citing *Canavan v. Beneficial Fin. Corp.*, 553 F.3d 860, 865 (3d Cir. 1977)). *See also Japan Petroleum Co. (Nigeria) Ltd. v. Ashland Oil, Inc.*, 456 F. Supp. 831, 838 (D. Del. 1978) (finding that agency relationships can be dispositive of a case and allowing further discovery before ruling on a motion to dismiss, although nothing that many courts hold the agency issue for a trial on the merits); *Fisher v. Townsends, Inc.*, 695 A.2d 53, 59 (Del. 1997) (explaining that the determination of whether a person is a servant or an independent contractor is ordinarily made by the factfinder).

Under Delaware law, a principal has liability for torts of the agent committed within the scope of the agency relationship. *See Khanna v. McMinn*, Civ. No. 20545-NC, 2006

---

[10]OCC contends that, as an agent, it could not have interfered with the contract between plaintiff and DSPC, nor conspired with DSPC.  Interestingly, OCC also claims that plaintiff's claims of fraud and negligence must fail because, as an agent, OCC could not have conspired or tortiously interfered with plaintiff's performance of its contract duties, seemingly conflating the various claims against it.

WL 4764028, at *28 (Del. Ch. May 9, 2006) (unpublished opinion).  However, even if

DSPC is liable as a principal for the torts committed by OCC, both are tortfeasors – OCC

is not absolved of liability simply because it is an agent.  *See First State Staffing Plus,*

*Inc. v. Montgomery Mut. Ins. Co.*, Civ. No. 2100, 2005 WL 2173993, at *10 (Del. Ch.

Sep. 6, 2005) (unpublished decision) (citing *Clark v. Brooks*, 377 A.2d 365, 370-71 (Del.

Super. 1977)).  Delaware follows the Restatement of Agency, which states that "[a]n

agent who does an act otherwise a tort is not relieved from liability by the fact that he

acted at the command of the principal or on account of the principal . . . ."  *T.V. Spano*

*Bldg. Corp. v. Wilson*, 584 A.2d 523, 531 (Del. Super. 1990) (quoting Restatement

(Second) of Agency § 343 (1958)).  Because OCC may be treated as a joint tortfeasor, it

can be held liable even without DSPC present.  *See Temple v. Synthes Corp.*, 498 U.S.

5, 7 (1990) (explaining that joinder of all joint tortfeasors is not necessary).  The

Restatement (Third) of Agency follows a similar approach, stating,

> an agent is subject to liability to a third party harmed by the agent's tortious
> conduct.  Unless an applicable statute provides otherwise, an actor remains
> subject to liability although the actor acts as an agent or an employee, with
> actual or apparent authority, or within the scope of employment.

Restatement (Third) of Agency § 7.01 (2006).[11]  Even assuming OCC acted as an agent

for DSPC, it remains responsible for any torts which it may have committed.  Other

circuits have enunciated a similar principle.  *See, e.g., Nottingham v. Gen. Am.*

*Commc'ns Corp.*, 811 F.2d 873, 880-81 (5th Cir. 1987) (explaining that "Rule 19 does

---

[11]The comments to this section of the Restatement further elaborate that an
agent is liable for his tortious conduct whether it is committed with actual or apparent
authority, or within the scope of employment, and that it is a basic principle that a
person is liable for the torts he commits.  *See* Restatement (Third) of Agency § 7.01
cmt. b (2006).

not . . . require joinder of principal and agent."). Because OCC can be held liable for its

torts, even if it is an agent of DSPC, plaintiff can obtain complete relief and the case is

not dismissed for failure to join DSPC on that basis.[12]

## B. Rule 19(a)(1)(B): Potential Prejudice

The court next determines whether DSPC's joinder is necessary under

19(a)(1)(B), which looks to whether:  the absent party claims an interest relating to the

subject matter of the litigation; disposing of the action will impair or impede the absent

party's ability to protect that interest; or it will leave an existing party subject to

substantial risk of incurring multiple or inconsistent obligations because of the absent

party's interest.  Fed. R. Civ. P. 19(a)(1)(B).

### 1. Prejudice to absent persons

The Third Circuit has found that the first clause of Rule 19(a)(1)(B) does not

require joinder simply because of the **possible** effect of *stare decisis* on the absent

person's rights; rather, the court need only require joinder when the persuasive effect is

not speculative, is direct and immediate, and is encompassed by the rules of collateral

estoppel or issue preclusion.[13]  *Janney Montgomery Scott*, 11 F.3d at 407-09.  In such a

---

[12]OCC's reliance on *Poulos v. Nicolaides*, 241 Fed. App'x 25, 27 (3d Cir. 2007), is misplaced. In *Poulos,* a principal (of an agent) was held to be a required party. *Id.* at 26. However, *Poulos* involved a breach of contract claim, not tort claims as plaintiff asserts here. *See id.* at 27. Further, the *Poulos* court noted that an authorized agent for a disclosed principal does not have personal liability to the other contracting party in the absence of a showing that the agent did not incur personal liability. *Id.* (citing *Viso v. Werner*, 369 A.2d 1185, 1187 (Pa. 1977). In the case at bar, however, plaintiff has alleged that OCC did incur personal liability. As explained *supra,* even if OCC is an agent, it may still be held liable for its tortious actions.

[13]*Janney* refers to Rule 19(a)(2)(I). Rule 19 has since been amended, and the applicable section is Rule 19(a)(1)(B); the language of the rule has not changed

case where judgment would be reasonably likely to preclude challenge by the absent

party of an issue material to his rights or duties in subsequent state litigation,[14]

continuation of the federal action could be said to impair or impede that person's

interest, requiring joinder under Rule 19. *Id.* at 409 (citing *Acton Co. v. Bachman Foods,*

*Inc.*, 668 F.2d 76, 78 (1st Cir. 1982)). However, preclusion is not an issue here, thus,

plaintiff will not be prejudiced by a decision in this court.[15]  Plaintiff brought an action in

state court to enjoin enforcement of an arbitration clause in the Contract, and the

Delaware Supreme Court stated that, because of its ambiguous nature, the arbitration

clause was unenforceable. *Kuhn Const., Inc.*, 990 A.2d at 396-97.  However, to date, it

does not appear that plaintiff has filed suit mirroring this case against DSPC in state

court, and the parties have not notified this court of any such development.  Thus, any

possible prejudicial effect of a federal judgment is pure speculation.

Rule 19(a)(1)(B) requires that the absent party "claim[ ] an interest relating to the

subject matter of the action . . . " and, where there is no showing that the absent party

actually has claimed an interest relating to the subject of the action, the court may deny

---

substantially.

[14]For issue preclusion to apply against an absent person, the absent person would have to have privity with a party in the current litigation. *See Janney Montgomery Scott*, 11 F.3d at 409 (citing 18 Wright et al. *Federal Practice and Procedure* §§ 4451, 4454, at 428, 459). Though it appears from the facts that DSPC and OCC are in privity, the record is inconclusive as no party has produced a contract between the two.

[15]In considering the effect that resolution of a dispute may have on an absent party for the purposes of Rule 19(a)(1)(B), courts have held that "plaintiff has the option to sue the party vicariously liable for the conduct of an agent in one lawsuit and thereafter, pursue the agent in a separate suit. In such cases, the concept of mandatory joinder does not apply." *Graco, Inc. v PMC Global, Inc.*, Civ. No. 08-1304, 2009 WL 904010, at *9 (D.N.J. Mar. 31, 2009) (quotations omitted).

a motion to dismiss. *See Axis Specialty Ins. Co. v. Brickman Group Ltd., LLC*, Civ. No. 09-3499, 2010 WL 376784, at *5 n.1 (E.D.Pa. Jan. 28, 2010) (citing *United States v. Payment Processing Ctr., LLC*, Civ. No. 06-0725, 2006 WL 2990392, at *4 (E.D.Pa. Oct.18, 2006)). DSPC has taken no action in the current case to assert that it has any interest in the subject matter of this case. As such, this court may deny OCC's claims under 19(a)(1)(B).

### 2. Prejudice to existing parties

The second clause of Rule 19(a)(1)(B) looks at whether an **existing** party would be subject to the risk of multiple or inconsistent obligations. *See Pittsburgh Logistics Sys., Inc. v. C.R. England, Inc.*, 669 F. Supp. 2d 613, 620 (W.D. Pa. 2009) (citing *Am. Home Mortgage Corp. v. First Am. Title Ins. Co.*, Civ. No. 07-1257, 2007 WL 3349320, *6-7 (D.N.J. Nov. 9, 2007) (noting that the fact that an existing party may have to claim contribution or indemnity from non-parties does not render it subject to multiple or inconsistent obligations)). OCC contends that, because the amount due under a contract and the damages awarded for interference with a contractual relationship are related, an inconsistent finding between a claim against DSPC and the current case would prejudice OCC. (D.I. 14 at 6) Again, the possibility of an inconsistent finding against DSPC and defendants is pure speculation, as no claim has yet been filed against DSPC in state court.

OCC further claims that joining DSPC as a third-party defendant under Rule 14 is inappropriate because it would make DSPC's liability a function of OCC's and, thus, incorrectly apportion liability. (*Id.*) For the reasons discussed above, defendants' liability is as joint tortfeasors. Under Rule 14, a defendant can bring in a third-party defendant

24

"who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)

(1). Thus, if defendants believe that the liability properly rests with DSPC, defendants

may implead DSPC under Rule 14.

## V. CONCLUSION

For the aforementioned reasons, defendants' motions to dismiss are denied

without prejudice to renew. An appropriate order shall issue.